UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERNADINE JOHNSON,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>JAMES B. PEAKE, Secretary, U.S.<br>Department of Veterans Affairs,<br><br>　　　　Defendant | Civil Action No.  08-1103 (JDB) |

## MEMORANDUM OPINION

Plaintiff Bernadine Johnson brings this action against the Secretary of the Department of Veterans Affairs ("Secretary" or "agency") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(3), based on alleged sexual harassment by a fellow employee at the agency.  Currently before the Court is the Secretary's motion to dismiss or, in the alternative, for summary judgment, on the ground that Johnson failed to exhaust her administrative remedies.[1]  For the reasons discussed below, the motion will be treated as a motion for summary judgment, and the motion will be denied.

## BACKGROUND

Since about 1997, Johnson has been employed as a resource manager at the Substance Abuse Rehabilitation Program ("SARP") in the agency's Veterans Affairs Medical Center.  Def.'s Mot., Ex. A, Tab B-1 ¶¶ 2, 31.  Johnson alleges that as recently as July 18, 2005, Isaiah Pearson, a Chief Counselor/Chief Rehabilitation Technician in SARP, engaged in sexual misconduct towards her including sexual banter, physical contacts with private parts of her body, and

---

[1] For ease of reference, the Court will refer to the Secretary's memorandum in support of his motion for summary judgment as "Def.'s Mem.," and to Johnson's opposition as "Pl.'s Opp'n."

accusations that she was having sex with a former co-worker.  Id. ¶¶ 4-6, 8, 14, 26, 31.  Johnson contends that although she complained several times to her supervisor, Karen Clark-Stone, regarding Pearson's sexual misconduct, nothing was done in response to these complaints.  Johnson Decl. ¶ 2.

On the morning of August 9, 2005, Johnson visited the Agency Equal Employment Opportunity ("EEO") office and spoke with EEO office employee Mary George and Agency EEO Manager David King regarding Pearson's sexual misconduct.  Def.'s Mot., Ex. A, Tab B-4 at 9, Tab B-5 at 2.  The parties' accounts of this meeting differ markedly.  According to George and King, George provided Johnson with pamphlets and brochures detailing the EEO complaint process, including the contact information for the Office of Resolution Management ("ORM").  Def.'s Mot., Ex. C at 207, 258.  These pamphlets stated that the EEO complaint process should be initiated through the ORM.  See id. at 258, Exs. A-1, A-2.  King recalls that Johnson made only a vague complaint about sexual harassment.  Def.'s Mot., Ex. A, Tab B-5 at 2.  In response, he explained to Johnson the process for filing an EEO complaint, and gave her a brochure that included the ORM's contact information.  Def.'s Mot., Ex. A, Tab B-5 at 4.  George recalls that Johnson stated several times during this meeting that she did not want to file a complaint.  Def.'s Mot., Ex. A, Tab B-4 at 4.

According to Johnson, however, she provided King with a detailed account of the sexual harassment by Pearson and was explicit in her desire to pursue a sexual harassment complaint: "I just told him [King] I wanted it to stop and I came here to file a complaint, and I talked to Ms. George and she sent me to talk to him."  Def.'s Mot., Ex. C at 306.  In response, King told her he would conduct an investigation and get back to her.  Id.; see also Johnson Decl. ¶¶ 5-6.  Johnson denies that she received any documents from either George or King that referenced the ORM.

Johnson Decl. ¶ 7. She asserts that she believed George was an EEO counselor, and that when she asked George if she was in the right place to file a complaint, George responded that she was. See Def.'s Mot., Ex. C, at 303-04. Johnson denies making any statement to George or King indicating that she did not wish to pursue a complaint, noting that at all times during that meeting and thereafter, she intended to pursue any remedies available to her regarding Pearson's sexual misconduct. Johnson Decl. ¶¶ 12-13.

Indeed, Johnson returned to the EEO office the next day and spoke with George again. Id. ¶ 8. According to George, Johnson once again did not indicate that she wanted to file an EEO complaint. Def.'s Mot., Ex. C at 258. In contrast, however, Johnson says that it was George who did not want her to file a complaint, as indicated by George's alleged statement to her that "the Agency did not want her complaint to go further because there were already too many complaints pending in the Agency." Johnson Decl. ¶ 9. To that end, George arranged for Johnson to meet with Dr. Richard Rosse, the Chief of Psychiatry in the Mental Health Service, and Nathaniel Banks, a program analyst. See id.; Def.'s Mot., Ex. A, Tab B-2 at 11. As a result of the meeting, Johnson was offered some accommodation -- the exact terms of which are in dispute -- but which were, in any event, considered inadequate by Johnson. See Def.'s Mot., Ex. A, Tab B-2, at 7-8;[2] Pl.'s Resp. to Def.'s Statement of Material Facts at 8-9.

On or about August 30, 2005, Johnson retained counsel, Michael Hoare, to represent her in connection with her sexual harassment claim. Pl.'s Opp'n, Ex. 5. Correspondence between Hoare and the agency followed, which resulted in Hoare eventually being informed by the agency

---

[2] The Secretary contends that Johnson was offered positions in other areas of the Mental Health Service where there would be little to no contact with Pearson and an indeterminate amount of medical and administrative leave. Def.'s Mot., Ex. A, Tab B-2 at 7, 11-12. The relief, if any, offered at the August 10th meeting, however, is not material to the Secretary's motion.

that EEO complaints must be filed through the ORM.[3]  Id. Ex. 3, 4, and 5.

On September 26, 2005, Johnson contacted the ORM to report Pearson's sexual misconduct.  Def.'s Mot., Ex. A, Tab A-1 at 1.  She was advised that she was over the 45-day period to contact a counselor, and was asked why she waited to do so.  Id. Tab A-3 at 2.  Johnson responded that she had reported the incident to King, and had never been informed that she should contact the ORM.  Id.  She said that she became aware of the ORM after she retained an attorney.  Id.  On August 8, 2006, Johnson submitted a hearing request form to the Equal Employment Opportunity Commission ("EEOC").  Def.'s Mot., Ex. A at 3.  On November 14, 2007, the EEOC held an administrative hearing on the agency's motion to dismiss Johnson's claims as untimely.  Based on this hearing, the administrative judge dismissed Johnson's EEO complaint.  Def.'s Mot., Ex. D at 5.  Johnson now seeks de novo review of her sexual harassment claim before this Court, as she is entitled to do under Title VII.  See Scott v. Johanns, 409 F.3d 466, 469 (D.C. Cir. 2005).

## **LEGAL STANDARD**

This motion will be treated as a motion for summary judgment.  The Secretary asserts that his motion is a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  See Def.'s Mot. at 1.  However, "strictly speaking . . . the requirement that a charge be timely filed with the EEOC is not jurisdictional . . .," and thus the Court will treat the motion

---

[3] On September 1, 2005, Hoare wrote a letter to George requesting that she direct correspondence regarding Johnson's "EEO complaint" to him. Pl.'s Opp'n, Ex. 5. On September 26, following a telephone conversation that took place on September 15, Hoare requested documentation from George regarding Johnson's visits to the EEO office on August 9 and 10. Id. Ex. 4. Johnson alleges, and the agency denies, that George never faxed this information to Hoare. Id. at 5 n. 2, Ex. 4. Then, in a letter dated September 30, 2005, George stated that she had informed Hoare over the telephone on September 15 that all EEO complaints are filed through the ORM. Id. Ex. 3.

as seeking dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Simpkins v. Wash. Metro. Area Transit Auth., No. 96-7188, 1997 WL 702349, at *2 (D.C. Cir. 1997). When, as here, on a Rule 12(b)(6) motion "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## ANALYSIS

I.      **Exhaustion of Administrative Remedies**

Before filing a lawsuit under Title VII, a plaintiff must exhaust her administrative remedies. Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997). The first step in the exhaustion process is timely initiation of contact with an EEO counselor. See 29 C.F.R. § 1614.105(a)(1). EEOC regulations state that "an aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." Id.; Steele v. Schafer, 535 F.3d 689, 693 (D.C. Cir. 2008).

The Secretary contends that Johnson did not contact an EEO counselor within 45 days of Pearson's alleged sexual misconduct -- that is, by September 1, 2005 -- and thus did not exhaust her administrative remedies before filing a complaint in this Court. Def.'s Mem. at 11-13. He argues that George and King, whom Johnson did contact within the 45-day window, are EEO staff members, not EEO counselors. Id. The Secretary contends that only contact with formally designated "EEO counselors" in the ORM within the 45-day window will suffice. See id. Moreover, the Secretary argues that Johnson did not demonstrate an intent to begin the EEO process when she reported Pearson's alleged sexual misconduct to George and King. See id. at 13-15. He asserts that although they informed Johnson about the EEO process, Johnson stated several times that she did not intend to file a complaint. Id. Johnson disputes these allegations, and argues that the evidence shows she demonstrated an intent to begin the EEO process. Pl.'s Opp'n at 13-17.

The resolution of the exhaustion issue turns primarily on whether either George or King was a "Counselor" within the meaning of the regulation, 29 C.F.R. § 1614.105(a)(1), and, if so, whether Johnson's meetings with them on August 9 and 10, 2005 satisfied the requirement to

"initiate contact." The EEOC regulations do not set forth a definition of the term "Counselor." However, under the longstanding EEOC interpretation of § 1614.105(a)(1), the requirement of "initiat[ing] contact with a Counselor" is satisfied when an employee initiates contact with an agency official logically connected with the EEO process and exhibits an intent to begin the EEO process. E.g., Allen v. Runyon, App. No. 01952557, 1996 WL 391224, *3 (E.E.O.C. July 8, 1996). All of the courts that have considered this interpretation have found it to be reasonable, and some have even gone further and suggested in dicta that the "Counselor" requirement may be dispensed with in its entirety. See Johnson v. Cohen, 6 Fed. Appx. 308, 311 (6th Cir. 2001) (To "initiate contact" "an employee must (1) contact an agency official logically connected with the EEO process, even if that official is not an EEO counselor . . . ."); Klugel v. Small, 519 F. Supp. 2d 66, 71 (D.D.C. 2007) ("An employee who believes that she has been the subject of discrimination must timely (1) contact an agency official 'logically connected' with the EEO process (not necessarily a Counselor) . . . ."); Cox v. Cuomo, App. No. 01972354, 1998 WL 455064, at *2 (E.E.O.C. July 30, 1998) ("The [EEOC] has long held that a complainant may satisfy the criterion of counselor contact by initiating contact with an agency official logically connected to the EEO process, even if the official is not an EEO Counselor."). This Court agrees that a federal employee satisfies the requirement to "initiate contact with a Counselor" by initiating contact with "an agency official logically connected with the EEO process," but declines to embrace the suggestion that under that interpretation, a "Counselor" can be someone who is "not a Counselor" without regard to whether they even offer any counseling. Such an interpretation would be contrary to the plain language of the regulation, and would ignore the remainder of the provisions describing all of the "counseling" services a "Counselor" must offer. See 29 C.F.R. § 1614.105(b) (setting forth mandatory Counselor activities at "initial counseling

session" and the manner of "conduct[ing] counseling activities").

Johnson has produced evidence to support her claim that George and King may be considered "Counselor[s]" within the meaning of § 1614.105 (a)(1). The term "Counselor" is, standing alone, ambiguous, and does not readily identify the personnel within any given agency who are considered "Counselor[s]." The Secretary's evidence indicates that the Department has formally designated only ORM staff as EEO "Counselor[s]," and has provided both constructive and actual notice to employees that they must initiate the EEO process through an EEO counselor at ORM. Def.'s Mot., Ex. A, Tab B-5 at 2, Ex. B ¶ 3. But Johnson denies having received any notice, and the posters that ostensibly provided constructive notice are, according to one witness, obscured, if visible at all. Johnson Decl. ¶¶ 7, 14; Settle Decl. ¶¶ 8-10. More significantly, Johnson has produced memoranda distributed to all agency employees stating that incidents of discrimination should be reported to the local EEO office or the ORM, thus supporting the view that employees in either office are "Counselor[s]." Pl.'s Opp'n, Exs. 6-7. Furthermore, Johnson's declaration indicates that George and King held themselves out as EEO counselors. See Johnson Decl. ¶¶ 7, 10-13 (stating that "based on what Ms. George told me, I understood that I was in the right place to pursue my complaint . . ." and "[a]t no time on August 9, 2005 did David King refer me to the [ORM] . . . ."); see also Def.'s Mot., Ex. C at 306 (Johnson's hearing testimony that "he [King] told me he would do an investigation and he would get back to me"); see also Settle Decl. ¶¶ 5-6 (stating that based on his communications with Johnson and King on August 9, 2005, Settle understood that Johnson had pursued an EEO complaint with King). Indeed, at least one of the agency's own documents refers to George as an "EEO counselor." See Def.'s Mot., Ex. A, Tab B-2 at 6 & Attachment (Dr. Rosse's Report of Contact, stating that "Ms. Mary George, EEO Counselor" and others were present for the August 10, 2005 meeting with

Johnson).  Hence, precisely who the agency designated as an EEO "Counselor" is a matter in genuine factual dispute.  Regarding Johnson's evidence to be true, as the Court must on summary judgment, see Anderson, 477 U.S. at 255, Johnson initiated contact with a "Counselor" when she met with George and King on August 9, 2005, well within the 45-day time period set forth by the EEOC.  Based on Johnson's declaration and exhibits, then, George and King were logically connected to the EEO process and held themselves out as EEO counselors, which is sufficient to consider them counselors within the meaning of the EEOC regulation, 29 C.F.R. § 1614.105(a)(1).

There is also a genuine issue of material fact as to whether Johnson demonstrated the requisite "intent to begin the EEO process" during her meetings at the EEO office on August 9 and 10, 2005.  Whether Johnson told George and King that she intended to file a complaint is vigorously disputed.  Johnson testified at the administrative hearing that she "told him [King] I wanted it [the harassment] to stop and I came here to file a complaint." Def.'s Mot., Ex. C, at 306; see also Johnson Decl. ¶ 12.  But George recalls the opposite -- according to her, Johnson stated several times during the meeting that she did not want to file a complaint.  Def.'s Mot., Ex. A, Tab B-4 at 4. In addition, the parties dispute whether EEO office staff members informed Johnson that any complaint must be filed with the ORM.  Johnson Decl. ¶¶ 7, 9-11; Def.'s Mot., Ex. A, Tab B-4 at 4; Def.'s Mot., Ex. C at 258, Exs. A-1, A-2.  These material factual issues cannot be resolved by the Court now.  Therefore, the Secretary's motion for summary judgment will be denied.

II.     **Equitable Tolling**

Johnson argues that the Court should equitably toll the 45-day period for initiating contact with a counselor because she reasonably relied on agency statements that an EEO complaint can

be initiated in the EEO office. Pl.'s Opp'n at 14, Exs. 6-7. Moreover, Johnson asserts that George told her that "the Agency did not want her complaint to go further because there were already too many complaints pending in the Agency." Johnson Decl. ¶ 9. EEOC regulations require that the agency extend the 45-day time limit if "the individual shows that he or she was not notified of the time limits and was not otherwise aware of them . . . [or] that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits . . . ." 29 C.F.R. § 1614.105(a)(2).[4] However, because the Secretary's motion for summary judgment will be denied on other grounds, and because of the many factual disputes in this case, the Court will not reach the issue of equitable tolling at this time.

## CONCLUSION

For the foregoing reasons, the Secretary's motion for summary judgment will be denied. A separate Order accompanies this Memorandum Opinion.

/s/
John D. Bates
United States District Judge

Date:  July 13, 2009

---

[4] Equitable tolling based on EEOC regulations is independent from the more demanding common law standard, which allows equitable tolling only in "extraordinary and carefully circumscribed circumstances." Harris v. Gonzales, 488 F.3d 442, 444 (D.C. Cir. 2007). Under the common law standard, equitable tolling has been held applicable to "parties who were misled about the running of a limitations period, whether by an adversary's actions, . . . by a government official's advice upon which they reasonably relied, . . . or by inaccurate or ineffective notice from a government agency required to provide notice of the limitations period . . . ." Bowden, 106 F.3d at 438.